IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**BRIAN BURNS, J.D.**                                                                             **PLAINTIFF**

**V.**                                                             **CAUSE NO. 3:17-CV-436-CWR-FKB**

**CITY OF JACKSON, MISSISSIPPI;**                                                          **DEFENDANTS**
**CHIEF LEE VANCE**, *in his Individual and Official Capacities*; **DETECTIVE TARIK WILLIAMS**, *in his Individual Capacity*; **SERGEANT BARRY HALE**, *in his Individual Capacity*; **SERGEANT CEDRIC MYLES**, *in his Individual Capacity*; **DETECTIVE TIMOTHY BAILEY**, *in his Individual Capacity*; **DETECTIVE MICHAEL MARTIN**, *in his Individual Capacity*; **DETECTIVE CARL ELLIS**, *in his Individual Capacity*; *and* **JOHN DOE DEFENDANTS #1-5**

**ORDER**

This matter is before the Court on the defendants' motions for summary judgment. The legal standard is well-established and need not be recited anew.

According to police officer testimony in this case, the Jackson Police Department has squads of officers that go to "hot spot areas" of the city, "jump out" of their cars, and detain ordinary citizens for "field interviews." Patrolmen do it in marked vehicles, while narcotics officers—who are apparently more "aggressive"—do it in unmarked vehicles. The officers do not necessarily suspect that the person has committed a crime; all that matters to them is that the person happens to be present in a targeted neighborhood. Jackson's various Police Chiefs have known about the practice. It has been going on for years.

Brian Burns is an Army veteran, a law school graduate, and a father of two. A jump out squad came to his grandmother's house on June 3, 2015. More than 15 officers from at least

eight cars flooded the scene, masked and armed, wearing street clothes "almost like hunting gear." Burns' kids and nephews ran inside screaming that men with guns were about to shoot Burns' brother. Burns went to the doorstep and threw his hands up. Officers told him to "shut the fuck up and get on the ground," then slammed him onto the concrete. No one presented a warrant.

Burns wasn't the target of the jump out—Jeremy Johnson was, and he wasn't there. But Burns was arrested and his car searched. He was taken downtown with "a big gash on [his] head," which was bleeding. His "knee was swollen" and his elbow and shoulder were "bucked out." One of the officers downtown recognized Burns from a mentoring program and from Burns' summer internships downtown. The officer released Burns, who took an ambulance to the hospital for treatment.

The police later charged Burns with resisting arrest, disobeying an officer, and interfering with an investigation. After four hearings, the charges were dropped because not one of the 15 officers present on June 3, 2015 appeared in court. Burns then filed this lawsuit seeking to hold the police accountable for what he contends was an unconstitutional seizure and excessive force.

Through their lawyers, JPD and the officers named in the complaint now claim that they weren't there that day. That is a curious assertion, since the deposition testimony reveals that several of them were present. *See, e.g.*, Docket No. 64-4 at 10-11. Those officers are not entitled to summary judgment since, as the Fifth Circuit held in another false arrest case, "[s]ummary judgment is not appropriate when questions about the credibility of key witnesses loom large and the evidence could permit the trier-of-fact to treat their testimony with skeptical scrutiny." *Deville v. Marcantel*, 567 F.3d 156, 165 (5th Cir. 2009) (quotation marks, citation, and ellipses omitted); *see also Adams v. May*, 903 F. Supp. 2d 433, 442-45 (S.D. Miss. 2012) (finding

conflict in testimony between plaintiff and other witnesses requiring denial of summary judgment on false arrest and excessive force claims); *Johnson v. Turner*, No. 3:11-CV-86-CWR-FKB, 2012 WL 1067674, at *3 (S.D. Miss. Mar. 29, 2012) (denying summary judgment on excessive force claim where parties presented two different versions of the facts, creating "classic dispute of fact" for a jury to decide).

JPD and the officers also claim that there was a warrant for Burns' arrest. That came as a surprise to Burns, since: (1) right before the incident, Burns had cleared background checks from the Mississippi Board of Bar Examiners; (2) the police hadn't brought any warrant that day; and (3) through all his criminal hearings, Burns was never provided a copy of any warrant. According to officer testimony, moreover, the raid wasn't intended to enforce a warrant, but occurred because Chief Vance personally ordered officers to make a show of force on Burns' grandmother's street. The Court must view the evidence in the light most favorable to the non-movant at this stage. That evidence suggests that the warrant explanation is a pretext, generated in litigation, to excuse an unlawfully-motivated seizure.

Despite these factual disputes, it is not clear that this case should proceed to trial in its present form. For example, has the plaintiff shown a fact dispute as to each of the officers who have moved for summary judgment and invoked the defense of qualified immunity? At a hearing, the parties should be prepared to point to specific record evidence for each defendant. Similarly, the parties should be prepared to advise the Court on which defendants should go to trial if the case is dismissed as to the unlawful arrest claim but proceeds on the excessive force claim. *E.g.*, *Deville*, 567 F.3d at 167 (denying summary judgment on excessive force claim where "there was no reason to believe that [the plaintiff's] actions posed a threat to the officers, herself, or to her grandchild," and "[m]ost importantly, there is a factual dispute over the nature

of Deville's resistance."); *see also Fleurantville v. Hicks*, No. 3:12-CV-32-CWR-LRA, 2012 WL 6553637, at *4 (S.D. Miss. Dec. 14, 2012) (finding that fact-finder must review the "totality of the circumstances" to determine whether the amount of force used was constitutionally permissible).

A hearing will be scheduled shortly.

**SO ORDERED**, this the 25th day of April, 2019.

s/ Carlton W. Reeves<br>
UNITED STATES DISTRICT JUDGE